**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FREESPIRA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF VETERANS AFFAIRS, *et al.*,<br><br>Defendants. | Civil Action No. 26-cv-89 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Plaintiff Freespira, Inc., the maker of an FDA-cleared prescription digital therapeutic device for treatment of post-traumatic stress disorder ("PTSD") and panic disorder, brings suit against the U.S. Department of Veterans Affairs ("VA") and its Secretary, Douglas A. Collins, seeking to declare unlawful and lift a "hold" placed on the purchases of its product within the VA healthcare system. *See* Compl. ¶¶ 4-7, ECF No. 1. Defendants now move to dismiss plaintiff's complaint, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of Article III standing, lack of subject matter jurisdiction, pursuant to the jurisdiction-stripping provision of the Veterans Judicial Review Act ("VJRA"), Pub. L. No. 100-687, 102 Stat. 4105 (1988), *see* 38 U.S.C. § 511(a), and because the alleged "hold" does not constitute final agency action, and for failure to state a claim for relief. *See* Defs.' Mot. to Dismiss ("Defs.' Mot.") at 1-2, ECF No. 18. Although plaintiff has standing to pursue its claims alleging violations of the Administrative Procedure Act and Due Process Clause of the Fifth Amendment, for the reasons that follow, defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim is granted.

## I. BACKGROUND

Set out below is a summary of the relevant factual background and procedural history to resolve the pending motion.

### A. Factual Background

The relevant facts as alleged in plaintiff's complaint are as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."). Plaintiff makes Freespira®, the only prescription digital therapeutic device with FDA-clearance for treatment of PTSD and panic disorder, which disorders affect significant numbers of U.S. military veterans. *See* Compl. ¶¶ 1-5. Though not directly contracting with the VA, plaintiff "offers Freespira®" to veterans in the VA's healthcare network "through an authorized reseller who possesses a supply contract with the VA." *Id.* ¶ 21. Thus, when a VA licensed clinician prescribes Freespira® to a veteran, the VA then purchases and obtains Freespira® through the authorized reseller's supply contract. *See id.* ¶¶ 22-23. Such purchase requests "are routed through the VA's National Prosthetic and Sensory Aids Service ('PSAS')." *Id.* ¶ 23. Plaintiff alleges, on information and belief, that from approximately November 2022 to October 2024, internal guidance from the VA's Office of Mental Health, while not "affirmatively supporting procurement of Freespira®," "stated that VA's licensed clinicians would be allowed to make their own clinical decisions regarding whether to prescribe Freespira®." *Id.* ¶¶ 24-25.

That status quo changed on or about October 29, 2024, when the VA placed "[c]onsideration/prescribing of" Freespira® "on hold" because Freespira® was "not . . . supported by VHA National Mental Health and Whole Health Office." *Id.* ¶¶ 25-26. The memorandum imposing that "hold," which was posted "on an internal VA SharePoint site,"

further stated that "the prescribing of FreeSpira is currently an unactionable request," and "PSAS is not authorized to execute a procurement action against an 'unactionable' request." *Id.* ¶ 26 (emphasis in original). The consequence of the "hold" is that "when Freespira® is prescribed by one of the VA's licensed clinician[s], the purchase of the product is blocked." *Id.* ¶ 27.

Plaintiff was not provided notice or an opportunity for a hearing prior to defendants' decision to impose the "hold," and has since been unable to obtain a consistent and accurate explanation for the "hold" or guidance regarding what can be done to lift it. *See id.* ¶¶ 29-30. For example, following outreach from plaintiff, the National Mental Health and Whole Health Offices, which are named in the memorandum as not supporting Freespira® prescriptions, "disclaimed any responsibility for the 'hold.'" *Id.* ¶¶ 32-33. The National Center for PSTD, part of the VA's Office of Mental Health, had more information, telling plaintiff, in September 2025, that purchases of Freespira® were on hold because the device does not "comply with guidance regarding provision of biofeedback devices and includes bundling of clinical services." *Id.* ¶ 34. Yet plaintiff contests the accuracy of that information, averring that "Freespira® is not a biofeedback device, it is a prescription digital therapeutic device" that "does not include bundling of any clinical services" and disputing the existence of the cited "guidance." *Id.* ¶¶ 36-37, 46-52. Moreover, plaintiff observes that other products used to treat mental health disorders, but lacking the FDA clearance that Freespira® has been granted, "are not subjected to the same procurement 'hold' as Freespira®." *Id.* ¶¶ 57-61.

### B. Procedural History

Plaintiff filed this lawsuit on January 13, 2026, alleging that defendants imposition of the "hold" on Freespira® purchases is arbitrary, capricious, and contrary to law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706 (Count I), violates plaintiff's

constitutional due process rights under the Fifth Amendment (Count II), and warrants injunctive relief (Count III). *See* Compl. ¶¶ 62-96. Defendants filed the pending motion to dismiss, *see* Defs.' Mot. at 1; Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem") at 1, ECF No. 18-1, which plaintiff opposes, *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 23, and is now ripe for this Court's review, *see* Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply"), ECF No. 28.

## II. APPLICABLE LEGAL STANDARDS

### A. Dismissal for Lack of Subject Matter Jurisdiction

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn123 v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Absent subject matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV. P. 12(h)(3). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject matter jurisdiction over the claim at issue, "including establishing the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). When reviewing such a motion, the court must "assume that the complaint states a valid legal claim," *Huron v. Cobert*, 809 F.3d 1274, 1278 (D.C. Cir. 2016), "accept the well-pleaded factual allegations as true," and "draw all reasonable inferences from those allegations in the plaintiff's favor," *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Arpaio*, 797 F.3d at 19). Courts "do not assume the truth of legal conclusions," however, so "threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Id.* at 865-66 (alterations

adopted) (quoting *Arpaio*, 797 F.3d at 19). The court may also "consider materials outside the pleadings to determine [its] jurisdiction." *Id.* at 866 n.7; *see also West v. Lynch*, 845 F.3d 1228, 1231 (D.C. Cir. 2017) ("As necessary, we cull additional facts from other parts of the record.").

### B. Dismissal for Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). In deciding a motion under Rule 12(b)(6), a court must accept all factual allegations as true, "even if doubtful in fact," *Twombly*, 550 U.S. at 555, and "construe the complaint in favor of the plaintiff," *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023) (internal quotation marks omitted) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Courts, however, "need not accept inferences . . . not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* (quoting *Hettinga*, 677 F.4th at 476). In determining whether a complaint fails to state a claim, a court may consider only "the facts alleged in the complaint, documents attached thereto or incorporated therein and matters of which it may take judicial notice." *Simmons v. Rubio*, 170 F.4th 905, 910 (D.C. Cir. 2026) (quoting *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

## III. DISCUSSION

Defendants move to dismiss plaintiff's complaint on the grounds that plaintiff lacks Article III standing; that subject matter jurisdiction is lacking over plaintiff's APA claim by

operation of Section 511(a) of the VJRA, *see* 38 U.S.C. § 511(a), and because the alleged "hold" does not constitute final agency action, *see* 5 U.S.C. § 702; and, finally, that plaintiff fails adequately to plead its Fifth Amendment due process claim. *See* Defs.' Mem. at 1-2. Each ground for dismissal of the APA claim (Count I) and constitutional due process claim (Count II) is discussed below.

**A. Standing**

Defendants first argue that plaintiff lacks standing because the asserted injury is not redressable by the requested relief. *See* Defs.' Mem. at 4-6. "[W]e must, as always, assure ourselves of our jurisdiction, including Article III standing," before assessing whether plaintiff adequately pleaded its APA and due process claims. *Nat'l Tr. for Historic Pres. in the United States v. Nat'l Park Serv.*, 185 F.4th 1185, 1207 (D.C. Cir. 2026); *see also Am. First Legal Found. v. Greer*, 153 F.4th 1311, 1314 (D.C. Cir. 2025) ("[W]e must consider whether [plaintiff] satisfied the requirements for Article III standing, a question bearing on whether the . . . court ha[s] subject-matter jurisdiction."). At the motion to dismiss stage, the question is whether the complaint "state[s] a plausible claim that the plaintiff has suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Humane Soc'y of the United States v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015); *see Lujan*, 504 U.S. at 561 (observing that each element of standing must be proven "with the manner and degree of evidence required at the successive stages of the litigation"). When answering that question, "[a court] may consider materials outside the pleadings" and "test the asserted theory of injury, causation, and redressability at the factual, evidentiary level." *Jibril v. Mayorkas*, 101 F.4th 857, 866 (D.C. Cir. 2024) (first quoting *Kareem*, 986 F.3d at 866 n.7; then quoting *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987)).

"To determine whether an injury is redressable, [courts] consider the relationship between the judicial relief requested and the injury suffered." *Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (internal quotation marks omitted) (quoting *California v. Texas*, 593 U.S. 659, 671 (2021)). The redressability requirement is satisfied if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted). Here, plaintiff alleges a concrete "economic injury" from being excluded from the VA's large healthcare network and thereby losing sales. Pl.'s Opp'n at 6-7; *see* Compl. ¶ 85 ("Plaintiff is effectively being foreclosed from the largest market for its product."); *see also Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 816 (D.C. Cir. 2001) ("[A]n excluded competitor . . . suffers a distinct injury if it is prevented from selling its product."). As for the requested relief, plaintiff seeks a declaration that "the VA's 'hold' on Freespira®" violates the APA and "the due process protections of the Fifth Amendment," as well as "an injunction requiring [d]efendants to lift the 'hold,' prohibiting [d]efendants from continuing to impose the 'hold' on purchases of Freespira®, and requiring [d]efendants to reinstate Freespira® as being eligible for purchase when prescribed by one of the VA's licensed clinicians." Compl. at 18.

The traceability and redressability requirements of standing "are usually 'flip sides of the same coin,'" such that "[i]f a defendant's action causes an injury, enjoining the action . . . will typically redress that injury." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380-81 (2024)); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185-186 (2000) ("It can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct . . . provides a

form of redress."). That typical redressability scenario is present here. Plaintiff alleges that defendants have excluded its product from the VA's healthcare network by imposing an internal "hold" that forecloses purchases of Freespira® "even when prescribed as medically necessary by one of the VA's own licensed clinicians." Compl. ¶ 6; *see id.* ¶¶ 25-27, 85. Since defendants' decision to impose the hold caused the inability for Freespira® to be purchased within the VA healthcare network and plaintiff's resultant economic injury, the requested injunction requiring defendants to lift the hold will redress that harm.

Defendants argue that "even if this Court orders the hold lifted on the device, physicians may still independently decide not to prescribe Freespira's product to patients," so the requested relief "does not assure that the third parties will ultimately undertake the requisite action to ameliorate [p]laintiff's concerns." Defs.' Mem. at 5-6. The redressability requirement, however, deals in "likel[ihood]," not certainty. *Lujan*, 504 U.S. at 561; *see Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 386 (D.C. Cir. 2020) ("The appellants have standing to challenge this set of conditions as likely causing higher prices for them."). Plaintiff recognizes that VA licensed clinicians may "later exercise th[eir] discretion" not to prescribe Freespira®, Pl.'s Opp'n at 5, and simply seeks to "reinstate Freespira® as being eligible for purchase when prescribed," Compl. at 18. While the conduct of the VA licensed clinicians may create an obstacle to remedying the alleged economic harm, plaintiff has adequately pleaded that those "third parties will likely react to the government regulation (or judicial relief) in predictable ways that will likely cause (or redress) the plaintiff's injury." *Diamond Alt. Energy, LLC*, 606 U.S. at 112 (internal quotation marks and citation omitted). For example, plaintiff asserts that VA licensed clinicians' continued prescriptions of Freespira®, after imposition of the "hold," have been blocked and those clinicians would predictably continue to prescribe Freespira® once the "hold"

is lifted. *See* Pl.'s Opp'n at 6 (citing Compl. ¶ 27). Such allegations, which are accepted as true at the motion to dismiss stage, are sufficient to establish plaintiff's standing here. *See Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 728 (D.C. Cir. 2015) (per curiam) ("We have previously found standing in cases where a third party would very likely alter its behavior based on our decision, even if not bound by it.").

**B. Jurisdiction under Section 511(a)**

Defendants next raise a statutory barrier to jurisdiction, arguing that Section 511(a) of the VJRA precludes consideration of plaintiff's APA claim. *See* Defs.' Mem. at 6-10. Section 511(a) states in full:

> The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to [enumerated exceptions], the decision of the Secretary as to any such question shall be final and conclusive and *may not be reviewed by any other official or by any court*, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a) (emphasis added).[1] The D.C. Circuit "ha[s] interpreted section 511(a) to 'preclude[] judicial review in [district] courts of VA decisions affecting the provision of veterans' benefits.'" *Blue Water Navy Vietnam Veterans Ass'n v. McDonald*, 830 F.3d 570, 574 (D.C. Cir. 2016) (quoting *Price v. United States*, 228 F.3d 420, 421 (D.C. Cir. 2000) (per curiam)). This provision is usually invoked to preclude review in district courts of a veteran's individual benefits determination. *See, e.g.*, *Price*, 228 F.3d at 422 (declining to review a veteran's claim that the VA wrongfully failed to reimburse his medical expenses); *Thomas v. Principi*, 394 F.3d 970, 974-75 (D.C. Cir. 2005) (declining to review certain claims brought by a

---

[1] The enumerated exceptions in Section 511(b), none of which apply here, allow "direct review of notice-and-comment rulemakings and certain other VA actions of 'general' applicability exclusively in the Federal Circuit," appeals of "individual benefits determinations through the VA's administrative machinery and ultimately to the Federal Circuit," and review of narrow matters relating to federally provided insurance, housing, and small business loans. *Blue Water Navy Vietnam Veterans Ass'n v. McDonald*, 830 F.3d 570, 573-74 (D.C. Cir. 2016); *see Bates v. Nicholson*, 398 F.3d 1355, 1367 (Fed. Cir. 2005) (detailing the four exceptions to the judicial review bar).

veteran regarding the adequacy of medical care). This provision's scope is significantly broader, however, reaching challenges to a "VA action[] of general applicability" or "a VA policy that leads directly to the denial of certain benefits for most, if not all, of the veterans it affects." *Blue Water Navy Vietnam Veterans Ass'n*, 830 F.3d at 574. Application of Section 511(a) turns on "whether adjudicating [the plaintiff's] claims would require the district court to determine first whether the VA acted properly," *Thomas*, 394 F.3d at 974 (internal quotation marks and citation omitted), in resolving an issue "that 'affects' veterans' requests for benefits," *Blue Water Navy Vietnam Veterans Ass'n*, 830 F.3d at 574. If the Secretary has not "actually decided" issues of law and fact affecting the provision of benefits, Section 511(a) does not bar review. *Broudy v. Mather*, 460 F.3d 106, 114 (D.C. Cir. 2006); *see Blue Water Navy Vietnam Veterans Ass'n*, 830 F.3d at 575 ("*Broudy* focused on the requirement of a 'decision of the Secretary,' and not on what *kinds* of secretarial decisions fall within section 511(a)'s bar.").

Defendants assert that the decision to authorize referrals to plaintiff for its prescription digital therapeutic device is a decision affecting the provision of benefits under 38 U.S.C. §§ 1701 and 1710. *See* Defs.' Mem. at 7. Section 1710 provides that the Secretary "shall furnish hospital care and medical services which the Secretary determines to be needed" to certain veterans, 38 U.S.C. § 1710, and Section 1701 broadly defines "medical services" to include "such other supplies or services as the Secretary determines to be reasonable and necessary," *id.* § 1701(6)(F)(iii); *see also* Defs.' Mem. at 7 (explaining that the authority to provide medical services is implemented at 38 CFR §§ 17.38(b) and 17.3200 *et. seq*); Pl.'s Opp'n at 8 (declining to challenge defendants' selection of statutory and regulatory authority justifying the Secretary's actions). Under these laws, the Secretary must determine whether medical services, like Freespira®, are "reasonable and necessary" for treatment of eligible veterans, 38 U.S.C.

§ 1701(6)(F)(iii), by considering matters such as whether they "serve as a direct and active component of the veteran's medical treatment and rehabilitation, and do not solely support the comfort or convenience of the veteran," 38 CFR § 17.3230(a)(1). Moreover, "[j]ust as past decisions to procure products like [p]laintiff's are decisions under 38 U.S.C. § 1710, decisions *not* to procure products would also be under the same law." Defs.' Mem. at 8

"As the party claiming subject matter jurisdiction, [plaintiff] has the burden to demonstrate that it exists." *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). Plaintiff asserts that Section 511(a) does not displace this Court's federal question jurisdiction under 28 U.S.C. § 1331, *see* Compl. ¶ 14, because "[t]he VA has not decided whether any identified veteran is entitled to Freespira," so determining whether the "hold" on Freespira® "is final, procedurally valid, and rational," Pl.'s Opp'n at 8, does not require reviewing "a decision by the Secretary under a law that affects the provision of benefits," 38 U.S.C. § 511(a). That argument falters on two grounds.

First, the fact that "[n]o individual benefits denial underlies this case" is of no import, Pl.'s Opp'n at 8, because the judicial review bar in Section 511(a) applies not "only [to] challenges to *individual* benefits determinations," this provision also precludes "review [of] a VA policy . . . that 'affects' veterans' requests for benefits," *Blue Water Navy Vietnam Veterans Ass'n*, 830 F.3d at 574, 576 (emphasis in original). For this reason, plaintiff's assertion that, under "the D.C. Circuit's narrow[] framework in *Price*, *Thomas*, and *Broudy*," Section 511(a) "bars review only when the Secretary has made an actual decision on the specific question presented in the course of an individual benefits proceeding" misreads the case law. Pl.'s Opp'n at 10. The D.C. Circuit explicitly clarified in *Blue Water Navy Vietnam Veterans Association* that its prior cases "presented . . . no opportunity to consider whether section 511(a) applies to

VA policies of general applicability, such as regulations or interpretations" and declined to "read the word 'only' into [Section 511(a)]" to limit decisions of the Secretary to "*only* individual benefits determinations" in benefits proceedings "when Congress has left it out." 830 F.3d at 575 (citations omitted). The primary case cited by plaintiff in support of its jurisdictional argument acknowledges as much, stating that "[t]he D.C. Circuit has interpreted section 511(a) to preclude judicial review in district courts of VA decisions *affecting* the provision of veterans' benefits," without limiting that preclusion to decisions denying an individual benefits request. *Prewitt v. McDonough*, 633 F. Supp. 3d 195, 200 (D.D.C. 2022) (cleaned up) (emphasis added); *see also id.* at 204 (reiterating, with respect to constitutional challenges, that courts lack jurisdiction to "evaluate VA 'decisions that may affect'" veterans' requests for benefits (citation omitted)).

Second, applying the proper test reveals that adjudicating plaintiff's APA claim would require determining first whether the VA acted properly in restricting procurement of Freespira® pursuant to Sections 1701 and 1710, which is an issue "that 'affects' veterans' requests for benefits." *Blue Water Navy Vietnam Veterans Ass'n*, 830 F.3d at 574; *see Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1026 (9th Cir. 2012) (en banc) (observing that "[m]ental health care" is "clearly" a benefit within the meaning of Section 511). As defendants explain, "deciding which products may be supplied to a veteran is a decision inextricably tied to the administration of benefits" by requiring assessing "which devices . . . meet internal criteria and are acceptable for use to veterans." Defs.' Reply at 1-2. Judicial review of plaintiff's APA claim would thus require determining whether defendants acted properly in deciding that Freespira® did not meet the VA's internal criteria, or whether defendants instead acted arbitrarily, capriciously, or in a manner contrary to law. *See* Compl. ¶¶ 62-86 (Count I). Such

second-guessing of "a decision by the Secretary under a law that affects the provision of benefits" is not permitted in district courts, so jurisdiction is lacking over plaintiff's APA claim. 38 U.S.C. § 511(a).

Plaintiff resists this conclusion, arguing that defendants' reliance on *Blue Water Navy Vietnam Veterans Association* is "[m]isplaced" because the policy challenged in that case "directly determined the eligibility of veterans for benefits, and the requested relief would have changed the standard applied to veterans' claims," whereas "[t]he challenged directive" in this case "does not determine whether any veteran is entitled to Freespira as a benefit" and, instead, simply "prevents PSAS from fulfilling [a] prescription" for Freespira® after "[a] clinician makes the individualized medical determination." Pl.'s Opp'n at 9-10 (citing 830 F.3d at 572-74). Yet plaintiff's framing of the challenged "hold" is too narrow. The VA imposed the hold because Freespira® "has not been supported by VHA National Mental Health and Whole Health Office," and that decision not to support further "procurement" or "[c]onsideration/prescribing of Freespira" is itself a determination that veterans are not entitled to receive Freespira® pursuant to Sections 1701 and 1710. Compl. ¶¶ 25-26.

Indeed, "[a]lthough challenges to VA decisions" affecting the benefits of multiple veterans "by non-veteran claimants," like plaintiff, "are less common, courts to have considered such claims have found Section 511(a) applies." *Allpro Staffnet Ltd.-Liab. Co. v. U.S. Dep't of Veterans Affs.* ("*Allpro*"), No. 3:25-cv-01483, 2026 WL 623746, at *6 (M.D. Tenn. Mar. 5, 2026) (collecting cases). For example, in *Allpro*, an in-home health services company brought APA and constitutional due process claims challenging the VA's decision to place a "hold" on referring veterans to the company for care. *Id.* at *1-3. Like plaintiff, the company did not contract with the VA directly but through third parties maintaining contractual relationships with

the agency. *Id.* at *1. Despite the plaintiff company's protestations that Section 511(a) did not bar its claims because the "hold" was not "a decision by the Secretary under a law that affects the provision of benefits," 38 U.S.C. § 511(a), the court held that jurisdiction was lacking because the VA's decisions "whether to refer a veteran for care and *which provider gets that referral*" were "plainly" within the scope of Section 511(a), *Allpro*, 2026 WL 623746, at *6 (emphasis added).[2] Similarly, here, the VA's decisions whether to procure prescription digital therapeutic devices for mental health services and which maker of such devices gets the sales when the devices are prescribed by clinicians fall within the preclusive scope of Section 511(a). The fact that plaintiff, as a non-veteran business, is not the typical litigant challenging "a decision by the Secretary under a law that affects the provision of benefits," 38 U.S.C. § 511(a), does not bring its claims outside the statute's broad scope, *see Allpro*, 2026 WL 623746, at *6; *Computer Training Inst. of Chicago, LLC v. U.S. Dep't of Veterans Affs.*, No. 13 C 7100, 2015 WL 1259521, at *5 (N.D. Ill. Mar. 17, 2015) (holding Section 511(a) precluded the court from considering an educational institution's claim that the VA wrongfully withdrew approval of its programs for participation in the GI Bill).[3]

Plaintiff makes a final plea to "sever or transfer" its "alternative rulemaking theory"—*i.e.*, that the alleged "hold" on Freespira® "functions as a substantive rule adopted without required procedures"—to the Federal Circuit pursuant to 28 U.S.C. § 1631, rather than dismissing the entirety of plaintiff's APA claim with prejudice, as requested by defendants. Pl.'s Opp'n at 13-14; *see* Defs.' Mem. at 14. To be sure, Section 511(a)'s broad judicial review bar

---

[2] The law affecting the provision of benefits in that case was Section 1703, which governs the VA's Veterans Community Care Program, but, like Section 1710, that provision provides for the "furnish[ing]" of "medical services" to veterans. 38 U.S.C. §§ 1703, 1710; *see Allpro*, 2026 WL 623746, at *5-6.

[3] Since Section 511(a) bars review of plaintiff's APA claim, determining whether the alleged "hold" on Freespira® constitutes final agency action, or whether sovereign immunity instead bars the claim, *see* Defs.' Mem. at 10-11, is an issue that need not be addressed.

"does not apply" to agency rulemaking "matters subject to section 502," 38 U.S.C. § 511(b)(1), so plaintiff may be able to seek review of its alternative argument in the appropriate forum, *see id.* § 502 (explaining that judicial review of substantive rules "may be sought only in the United States Court of Appeals for the Federal Circuit"). "But a dismissal for want of subject-matter jurisdiction can only be without prejudice," *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020), and the decision to transfer matters "pursuant to 28 U.S.C. § 1631 [is] committed to the discretion of the District Court," *Leitner-Wise v. Clark*, No. 18-cv-771 (BAH), 2018 WL 6787999, at *7 (D.D.C. Dec. 26, 2018) (citation omitted). Plaintiff asserts that the Federal Circuit would only have jurisdiction to review its "alternative rulemaking theory," which is ostensibly asserted in just four paragraphs of the complaint, Pl.'s Opp'n at 13-14 (citing Compl. ¶¶ 71-72, 80-81), not plaintiff's primary argument around which the complaint is structured, so transfer of plaintiff's claim to the Federal Circuit is not "in the interest of justice" since plaintiff would presumably need to amend the complaint to state adequately a claim for relief pursuant to its alternative theory, 28 U.S.C. § 1631; *see Goldstein v. Olympia Swimming Pool Co.*, No. 25-cv-2588 (RJL), 2026 WL 1803660, at *3 (D.D.C. June 23, 2026) (denying a request to transfer pursuant to Section 1631 because the plaintiff "[could] simply refile in a proper forum"); *Nwosu v. Bolduc*, No. 23-cv-3841 (DLF), 2024 WL 1050339, at *2 (D.D.C. Mar. 10, 2024), *aff'd*, No. 24-7034, 2024 WL 4455866 (D.C. Cir. Oct. 8, 2024) ("[D]ismissing an action rather than transferring it is appropriate when 'it appears that [a] complaint in its current form would likely face dismissal . . . for failure to state a claim.'" (citation omitted)). Moreover, plaintiff's concerns about "refiling problems" after dismissal with prejudice are addressed by the appropriate dismissal without prejudice. Pl.'s Opp'n at 14.

### C. Fifth Amendment Due Process Claim

Plaintiff's second claim is that "[t]he VA's 'hold' on Freespira® deprives [it] of a liberty interest without due process in a manner that violates the Fifth Amendment." Compl. ¶ 93. Defendants do not challenge plaintiff's constitutional claim as precluded under Section 511(a), but "federal courts have an independent obligation to raise and decide" questions of subject matter jurisdiction "even when the parties either overlook or elect not to press them." *Doe v. Blanche*, 172 F.4th 901, 912 (D.C. Cir. 2026) (internal quotation marks and citation omitted). "Although the D.C. Circuit has not had occasion to address what sorts of constitutional claims may be brought in district court consistent with [Section] 511(a)," other Judges on this Court have previously applied "substantially the same analysis to constitutional and non-constitutional claims" to answer the jurisdictional question, and "[t]he decisions of other courts confirm" the appropriateness of that approach. *Prewitt*, 633 F. Supp. 3d at 201 (citing *Veterans for Common Sense*, 678 F.3d at 1025).[4] Applying that analysis renders a different result for plaintiff's constitutional claim than its APA claim because it was not "necessary to [the] decision by the Secretary" to impose the alleged "hold" on Freespira®, 38 U.S.C. § 511(a), to first determine whether imposing that "hold" without affording plaintiff "notice or an opportunity for a hearing with an impartial decisionmaker" violated plaintiff's due process rights, Compl. ¶ 29. In other words, since the Secretary did not "ma[ke] an 'actual decision' on [the] issues that the parties are

---

[4] The Supreme Court is currently considering whether Section 511(a) precludes district courts from hearing facial constitutional challenges to statutes affecting veterans' benefits. *See Johnson v. U.S. Cong.*, *cert. granted*, No. 25-735 (Apr. 6, 2026). While the petitioner in that case conceded "that the VJRA strips district courts of jurisdiction over as-applied constitutional challenges to statutes affecting individual benefits decisions," Brief for Respondent at 11, *Johnson v. U.S. Cong.*, No. 25-735 (July 13, 2026) (internal quotation marks and citation omitted), some questions at oral argument probed whether removing as-applied constitutional challenges to a decision of the Secretary from the district court's jurisdiction was appropriate, *see* Transcript of Oral Argument at 5-9, *Johnson v. U.S. Cong.*, No. 25-735 (Oct. 5, 2026). That question need not be answered here because the constitutional claim falls outside the scope of Section 511(a) for another reason, *i.e.*, that the Secretary did not actually decide whether plaintiff was afforded due process of law when imposing the "hold" on Freespira®. *See Blue Water Navy Vietnam Veterans Ass'n*, 830 F.3d at 575 (holding that Section 511(a) "bars review in the district court of decisions that the Secretary has actually made").

asking the District Court to decide here"—*i.e.*, whether plaintiff has a protected interest or received constitutionally sufficient procedures before the alleged "hold" was imposed—Section 511(a) "is no bar." *Broudy*, 460 F.3d at 114.

Rather than moving to dismiss plaintiff's constitutional due process claim for lack of subject matter jurisdiction, defendants argue that this claim should be dismissed for failure to state a claim under Rule 12(b)(6). *See* Defs.' Mem. at 11-13. "To bring a claim under the Due Process Clause, a plaintiff must show (i) deprivation of a protected liberty or property interest; (ii) by the government; (iii) without the process that is 'due' under the Fifth Amendment." *NB ex rel Peacock v. Dist. of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citations omitted). Thus, "'[t]he first inquiry in every due process challenge' is whether the government has deprived the plaintiff of a protected liberty or property interest," *Hesai Tech. Co. v. U.S. Dep't of Def.*, 186 F.4th 873, 877 (D.C. Cir. 2026) (citation omitted), and "[o]nly after finding the deprivation of a protected interest do [courts] look to see if the government's procedures comport with due process," *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010). Plaintiff asserts "a constitutionally protected liberty interest" in "follow[ing] a chosen trade or profession without unreasonable governmental interference," Compl. ¶ 88 (citing *Trifax Corp. v. Dist. of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003)), and deprivation of that liberty interest because "[t]he VA's hold on Freespira® constitutes 'broad preclusion' that seriously affects, if not destroys, [p]laintiff's ability to obtain contracts in its field," *id.* ¶ 91; *see* Pl.'s Opp'n at 14-15.

While the D.C. Circuit has recognized that the asserted liberty interest merits constitutional protection, *see Trifax Corp.*, 314 F.3d at 643, plaintiff's "broad preclusion" theory of deprivation falls short, Compl. ¶ 91. That theory has thus far been limited to the context of the "stigma-plus" doctrine, under which a plaintiff must demonstrate both "reputational harm" and

"that either (1) the government has deprived [the plaintiff] of some benefit to which [it has] a legal right or (2) the government-imposed stigma is so severe that it broadly precludes [the plaintiff] from pursuing a chosen trade or business." *Hesai Tech. Co.*, 186 F.4th at 877-88 (internal quotation marks and citation omitted). Yet plaintiff includes no allegations in its complaint regarding injury to its reputation or stigma imposed by the alleged "hold" on Freespira®, *see generally* Compl., and thus cannot establish the necessary "reputational-harm component," *Hesai Tech. Co.*, 186 F.4th at 878; *see Pheenix Ush LLC v. Dist. Dep't of Transp.*, No. 25-cv-922 (JMC), 2025 WL 1190793, at *7 & n.5 (D.D.C. Apr. 24, 2025), *aff'd*, No. 25-7060, 2025 WL 3013527 (D.C. Cir. Oct. 24, 2025) (addressing the plaintiff company's failure to establish the "requisite reputational harm"); *New Vision Photography Program, Inc. v. Dist. of Columbia*, 54 F. Supp. 3d 12, 31 (D.C.C. 2014) (same). The reputational-harm component of this theory of deprivation is not *pro forma* but rather, as the Supreme Court has recognized, is indicative of a plaintiff's ability to obtain future employment in its chosen field. *See Bd. of Regents v. Roth*, 408 U.S. 564, 573-74 (1972) (holding that an employee did not have a liberty interest in reemployment but noting that, had the government made a "charge against him that might seriously damage his standing and associations in his community" or "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities," this "would be a different case"). Indeed, the case that plaintiff marshals in support of its asserted liberty interest specifically discusses the stigma allegedly faced by the *pro se* plaintiff when determining that he "plausibly state[d] a liberty interest." *Straker v. U.S. Dep't of Def.*, No. 25-cv-00812 (APM), 2026 WL 1878437, at *6 (D.D.C. June 30, 2026); *see* Pl.'s Opp'n at 15.

Even setting aside the stigma requirement, plaintiff has not sufficiently established that "the government has seriously affected, if not destroyed, [its] ability to obtain employment [or contracts] in [its] field." *Trifax Corp.*, 314 F.3d at 644 (internal quotation marks and citation omitted).[5] This broad preclusion requirement has been deemed satisfied where the government action "had the effect of putting [the plaintiff] out of business," *Old Dominion Dairy Prods., Inc. v. Sec'y of Def.*, 631 F.2d 953, 964 (D.C. Cir. 1980), but not where the plaintiff "has merely lost one position in [the] profession but is not foreclosed from reentering the field," *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994). Most recently, the D.C. Circuit held that a corporate plaintiff failed to establish broad preclusion where the government's "Chinese military company designation" created a stigma that allegedly caused one of its "largest U.S. contractors" and another "major client" to "cease[] purchasing from [the plaintiff]" and led to prohibitions in several states and the Department of Defense "from using or procuring [the plaintiff's] products." *SZ DJI Tech. Co. v. U.S. Dep't of Def.*, 187 F.4th 528, 535 (D.C. Cir. 2026) (citations omitted). Despite these seemingly significant consequences, the fact that the designation "cost [the plaintiff] *some* business opportunities" was "not enough." *Id.* The company had other markets available to "sell[] drones to consumers, companies, and governments worldwide," and

[5] Plaintiff appears to invoke the alternate theory under the stigma-plus doctrine in its opposition brief, arguing that the alleged "hold" "automatically excludes the product from the VA's purchasing system." Pl.'s Opp'n at 14-15. Although such automatic exclusion "combined with reputational harm, depriving someone of 'the right to be considered for government contracts in common with all other persons' suffices to trigger constitutional protections" in the government contracting context, *Hesai Tech. Co.*, 186 F.3d at 878 (quoting *Gen. Elec. Co.*, 610 F.3d at 121), plaintiff failed to assert this theory in its complaint, *see* Compl. ¶¶ 82-93, which cabins the scope of review on a motion to dismiss under Rule 12(b)(6), *see Simmons*, 170 F.4th at 910; *see also SZ DJI Tech. Co. v. U.S. Dep't of Def.*, 187 F.4th 528, 534 (D.C. Cir. 2026) (determining that "any argument based on the automatic-exclusion theory" was not preserved even where the company "mentioned its statutory ineligibility to contract with" the government). Moreover, even if this theory of deprivation had been properly pleaded, plaintiff's claim does not arise in the government contracting context, as plaintiff receives referrals for its product through "an authorized reseller who possesses a supply contract with the VA," Compl. ¶ 21, rather than through a competitive bidding process, and nothing in the complaint suggests that plaintiff would be automatically foreclosed from pursuing a future contract with defendants, *see Pheenix Ush LLC*, 2025 WL 1190793, at *7.

remained a "market leader" despite the designation, so its "alleged losses f[ell] well short" of establishing broad preclusion. *Id.*

Here, plaintiff failed to include sufficient factual allegations in its complaint to establish that the alleged "hold" on Freespira® has seriously affected its ability to continue working in the digital therapeutic device field. The strongest allegation in support of plaintiff's theory of deprivation is that "[t]he VA operates the nation's largest healthcare provider, serving over 9.1 million patients each year" and "represents the single largest population of patients who could benefit from access to Freespira®," such that the alleged "hold" is "effectively . . . foreclos[ing] [plaintiff] from the largest market for its product." Compl. ¶ 85; *see id.* ¶ 19. Yet plaintiff provides no information about other markets available for Freespira® in the private sector, the portion of its revenue attributable to procurement from the VA, or whether it is able to serve the same population of patients it previously served through the VA through other means. *See generally* Compl. Plaintiff's continued business operations, despite the alleged "hold" being in place for over two years, *see* Compl. ¶ 25, suggests that the government conduct did not "effectively put [plaintiff] . . . out of business," *Trifax Corp.*, 314 F.3d at 644 (citation omitted). Moreover, the fact that "Freespira® is the *only* prescription digital therapeutic device with FDA-clearance for" PTSD and panic disorder indicates plaintiff has some degree of market advantage. Compl. ¶ 5 (emphasis added). Since the complaint lacks "sufficient factual matter" to show that the government deprived plaintiff of a protected liberty or property interest, the due process count fails to "state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (citation omitted), making a further "look to see if the [government's] procedures comport[ed] with due process," *Gen. Elec. Co.*, 610 F.3d at 117, unnecessary.

* * *

In sum, plaintiff's APA claim must be dismissed for lack of subject matter jurisdiction under Section 511(a) of the VJRA and plaintiff's constitutional due process claim must be dismissed for failure to plead a protected liberty or property interest, as is necessary to state a claim for violation of due process under the Fifth Amendment.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), is granted. An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: November 23, 2026

**BERYL A. HOWELL**
United States District Judge